## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy Case No. 15 B 17676 |
| | ) | |
| RONALD SPIELMAN, | ) | |
| | ) | |
| Debtor. | ) | Honorable Janet S. Baer |
| ——————————————— | ) | |
| | ) | |
| THE CITY OF CHICAGO, | ) | Adversary Case No. 16 A 00020 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RONALD SPIELMAN, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |

### MEMORANDUM OPINION

Plaintiff City of Chicago (the "City") filed a two-count amended adversary complaint against debtor-defendant Ronald Spielman ("Spielman"), seeking a determination that a judgment debt owed to it by Spielman is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(7).[1]  The matter is now before the Court on the City's motion for summary judgment on both counts of the complaint. For the reasons set forth below, the Court finds that there are no genuine issues of material fact and that the City is entitled to judgment as a matter of law on both counts of the complaint.  As such, the City's motion for summary judgment will be granted.

### JURISDICTION

The Court has jurisdiction to determine the interests of the parties in this matter.  That jurisdiction is conferred by 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the

---

[1] Unless otherwise noted, all statutory and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532, and the Federal Rules of Bankruptcy Procedure.

United States District Court for the Northern District of Illinois.  The matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## BACKGROUND

The material facts in this case are gleaned from the docket, the pleadings, and the summary judgment statements and response, as well as the exhibits attached thereto.  Many such facts are derived from the City's statement of facts in support of its motion ("PSOF") and have been admitted by Spielman in his response.  Other facts come from Spielman's statement of additional facts ("DSOF") and are deemed admitted because the City failed to file a statement controverting those facts pursuant to Local Rule 7056-1(C).[2]

Spielman is the sole member and manager of Sound Solutions Windows & Doors, Inc. ("Sound Solutions"), which operated from January 2006 through June 2014.  (DSOF ¶ 24.)  On November 4, 2009, a *qui tam* relator[3] filed a complaint[4] in the U.S. District Court for the Northern District of Illinois (the "District Court") against Spielman, Sound Solutions, and others, alleging violations of the federal False Claims Act, 31 U.S.C. § 3720 et seq., and the City's False Claims Ordinance, Municipal Code of Chicago ("MCC") chapter 1-22.  (PSOF ¶¶ 1 & 2.)  The claims were based on contracts that Sound Solutions and the City executed in connection with work that Sound

---

[2] Local Rule 7056-1(C) provides, in relevant part, as follows: "All additional material facts set forth in the opposing party's statement filed under section A(2)(b) of Rule 7056-2 will be deemed admitted unless controverted by a statement of the moving party filed in reply."

[3] "[T]he False Claims Act (FCA) is the most frequently used of a handful of extant laws creating a form of civil action known as *qui tam*. . . . [A] private person (the relator) may bring a *qui tam* civil action 'for the person and for the United States Government' against the alleged false claimant, 'in the name of the Government.'"  *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 768-69 (2000) (citing 31 U.S.C. § 3730(b)(1)).

[4] Plaintiffs in the prior litigation included the United States of America ex rel. Chicago Regional Council of Carpenters, the State of Illinois, the United Brotherhood of Carpenters and Joiners of America, and later, upon intervention, the City of Chicago.  (PSOF ¶ 4 & Ex. A.)

Solutions performed at O'Hare and Midway Airports in Chicago. (DSOF ¶ 27.) The contracts required Sound Solutions to comply with the City's construction programs aimed at benefitting minority- and women-owned businesses. (*Id.* ¶ 28.) According to the complaint, Spielman conspired to defraud the City through the submission of false claims for work purportedly performed by minority-owned businesses, when the work was, in fact, not performed by such businesses. (PSOF, Ex. A.)

The District Court complaint was unsealed on January 7, 2013 and thereafter served on Spielman on February 11, 2013. (*Id.* ¶ 3.) Spielman subsequently appeared by counsel in the District Court on February 13, 2013. (*Id.*) During the litigation, Spielman and Sound Solutions engaged in settlement negotiations with the City until July 2014. (DSOF ¶ 35.) At no time did Spielman file an answer to the complaint, and, on September 9, 2014, nearly eighteen months after he was served with the complaint, Spielman was declared to be in default. (PSOF ¶ 5.) The District Court found that there was no good cause for Spielman's failure to file an answer. (*Id.*, Ex. B.)

On April 17, 2015, the City filed a motion for default judgment against Spielman and Sound Solutions. (DSOF ¶ 47.) That motion was granted as to Spielman on April 27, 2015; however, the amount of the judgment was not determined at that time. (PSOF ¶ 6.) The District Court docket reflects that Spielman requested a prove-up hearing in order to contest the amount of the default judgment. (N.D. Ill. Case 09-CV-06948 ("District Court Case"), Dkt. No. 108.) A prove-up hearing was thereafter scheduled for May 22, 2015. (PSOF ¶ 6.) Three days before the hearing, on May 19, 2015, Spielman filed his chapter 7 bankruptcy petition, which stayed the proceedings in the District Court. (*Id.* ¶¶ 6 & 7.)

On December 16, 2015, this Court entered an order modifying the stay which permitted the

3

proceedings to resume in the District Court. Once the stay modification order became effective, Spielman filed a motion seeking vacation of the default judgment in the District Court and leave to file an answer. (DSOF ¶ 54.) After the motion was fully briefed, it was denied on April 18, 2016. (*Id.*; PSOF ¶ 10.) In its order denying the motion, the District Court noted that Spielman had not presented a meritorious defense to the claims asserted against him. (PSOF, Ex. B.) Spielman later filed a motion to reconsider, which was also denied. (District Court Case, Dkt. Nos. 138 & 145.) On May 3, 2016, the City moved for entry of a final default judgment against Spielman in the amount of $13,554,832. (PSOF ¶ 11.) Spielman filed a response to the City's motion, and the City filed a reply. (District Court Case, Dkt. Nos. 149 & 152; PSOF ¶ 12.) The District Court referred the matter to a magistrate judge for a recommendation. (PSOF ¶ 12.)

On May 11, 2017, the magistrate judge issued a Report and Recommendation, which recommended that the City's motion for default judgment be entered against Spielman and ascertained the amount of damages. (*Id.* ¶ 14 & Ex. C.) The report shows that the magistrate judge considered the arguments of both parties before reaching a final decision. (*Id.*, Ex. C.) On December 18, 2017, the District Court issued an opinion and order adopting the magistrate judge's recommendation, over Spielman's objection, and entered judgment against Spielman in the amount of $13,554,508.01. (*Id.* ¶ 15 & Ex. D.) Spielman did not appeal the final order. (*Id.* ¶ 16.)

The District Court's opinion awarded damages as follows:

1) the City's actual damages resulting from the contracts between the City and Sound Solutions, in the amount of $4,454,836;

2) the City's treble damages pursuant to the False Claims Act and MCC § 1-22-020, less the amount representing actual damages, in the amount of $8,909,672; and

4

3) civil penalties pursuant to MCC § 1-22-020, in the amount of $190,000.

(*Id.* at Ex. D, pp. 10-11.)  In this adversary proceeding, the City seeks a determination that the judgment award is nondischargeable pursuant to §§ 523(a)(2)(A) and (a)(7).

## SUMMARY JUDGMENT

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (made applicable to adversary proceedings by Fed. R. Bankr. P. 7056).  The primary purpose of the summary judgment procedure is to avoid unnecessary trials where no material facts are in dispute.  *See Trautvetter v. Quick*, 916 F.2d 1140, 1147 (7th Cir. 1990); *Farries v. Stanadyne/Chi. Div.*, 832 F.2d 374, 378 (7th Cir. 1987) (quoting *Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n of Indianapolis*, 806 F.2d 146, 149 (7th Cir. 1986)).  Thus, on a motion for summary judgment, the court must decide, based on the evidence, whether there is a material disputed fact that requires a trial.  *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507 (7th Cir. 2010); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Where the material facts are not in dispute, the only issue is whether the moving party is entitled to judgment as a matter of law.  *ANR Advance Transp. Co. v. Int'l Bhd. of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir. 1998).

The party seeking summary judgment always bears the burden of establishing that there are no genuine issues of material fact in dispute.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In determining whether the movant has met its burden, the Court must view all reasonable inferences drawn from the underlying facts in a light most favorable to the nonmoving party.  *Anderson*, 477

5

U.S. at 261 n.2; *Smeigh v. Johns Manville, Inc.*, 643 F.3d 554, 560 (7th Cir. 2011). Once the moving

party satisfies its initial burden of production, the party opposing the motion may not rest on the

mere allegations or denials in his pleadings; rather, his response must set forth specific facts showing

that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248;

*Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001).

A review of the documents filed by the parties in connection with the City's motion for

summary judgment reveals that there are no material facts in dispute. Thus, the only question

to be considered is whether the City is entitled to judgment as a matter of law.

## DISCUSSION

In its complaint, the City seeks a determination that the debt owed to it by Spielman is

nondischargeable pursuant to §§ 523(a)(2)(A) and (a)(7). These subsections provide specific

exceptions to the dischargeability of debts. Exceptions to discharge must be construed strictly

against a plaintiff and liberally in favor of the debtor. *Stamat v. Neary*, 635 F.3d 974, 979 (7th Cir.

2011). "Section 523(a) is to be narrowly construed so as not to undermine the Code's purpose of

giving the honest but unfortunate debtor a fresh start." *Shriners Hosp. for Children v. Bauman (In*

*re Bauman)*, 461 B.R. 34, 44 (Bankr. N.D. Ill. 2011) (internal quotations omitted). As the party

seeking to establish an exception to discharge, the City bears the burden of proof on its claims by

a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *In re Bero*, 110 F.3d

462, 465 (7th Cir. 1997).

### A.  Dischargeability Under § 523(a)(2)(A)

The City contends that it is entitled to judgment as a matter of law under § 523(a)(2)(A).

This section excepts from discharge any debt "for money, property, services, or an extension,

6

renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" 11 U.S.C. § 523(a)(2)(A). Three separate grounds for nondischargeability are included under § 523(a)(2)(A): false pretenses, false representation, and actual fraud.

The City argues that the first portion of the judgment award representing its actual damages is nondischargeable under § 523(a)(2)(A) because Spielman defrauded the City in connection with the construction contracts. Accordingly, the City contends, it is entitled to judgment as a matter of law on Count I of the adversary complaint through the application of collateral estoppel. Because the District Court entered a default judgment on the City's claims that Spielman submitted false and fraudulent claims, the City argues that Spielman is estopped from relitigating the elements of fraud in this Court.

Bankruptcy courts ordinarily make independent decisions as to whether debts are nondischargeable under the provisions of § 523(a). *See Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir. 1994). It is well-established, however, that the doctrine of collateral estoppel applies in bankruptcy discharge exception proceedings. *Grogan*, 498 U.S. at 284 n.11; *Klingman v. Levinson*, 831 F.2d 1292, 1294-95 (7th Cir. 1987). Accordingly, "if a court of competent jurisdiction has previously entered judgment against [a] debtor," collateral estoppel may bar the debtor from re-litigating "the underlying facts in the bankruptcy court." *Meyer*, 36 F.3d at 1378. Indeed, a bankruptcy court can find that a debt is nondischargeable based *solely* on the evidence of the prior proceeding, as long as the judgment in that proceeding was obtained fairly, the defendant was accorded due process, the complaint and judgment order are unambiguous that the judgment debt is "of a non-dischargeable nature," and the record from the prior proceeding is before the bankruptcy

7

court. *U.S. Life Title Ins. Co. of N.Y. v. Wade* (*In re Wade*), 26 B.R. 477, 481 (Bankr. N.D. Ill. 1983).

As a federal court rendered the judgment sought to be used against Spielman, federal principles of collateral estoppel govern. *Heiser v. Woodruff*, 327 U.S. 726, 732-33 (1946). In order for collateral estoppel to apply to this matter, the following elements must be satisfied:

> (1) [T]he issue sought to be precluded must be the same as the one involved in the prior action; (2) the issue must have been actually litigated; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must be fully represented in the prior action.

*Herbstein v. Bruetman*, 266 B.R. 676, 683 (N.D. Ill. 2001), *aff'd*, 32 F. App'x 158 (7th Cir. 2002) (citing *Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000)). Spielman concedes the first and third elements, that the same issue of fraud was involved in the District Court litigation and that the determination of fraud was essential to the District Court's final judgment. He disputes only the second and fourth elements.

As to the fourth element—that the party against whom collateral estoppel is invoked be represented in the prior action—Spielman argues that the counsel he hired to represent him in the District Court case was deficient and did not properly represent him in the litigation. To support his argument, Spielman cites to *Choice Hotels Int'l, Inc. v. Grover*, 792 F.3d 753, 754-56 (7th Cir. 2015), a Seventh Circuit decision which held that a client is bound to the acts of his attorney and affirmed the district court's denial of the client's motion for relief from judgment. Without citing any authority, Spielman attempts to distinguish this precedential rule by arguing that a different standard should apply in determining whether a default judgment arising from attorney negligence should be given preclusive effect.

8

In setting forth his arguments, Spielman misunderstands what it means to be "fully represented" in the prior action. This element of collateral estoppel comes into play when a party seeks to enforce a prior judgment against a person who was not a party to the prior litigation. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). In such circumstances, the "adequately represented" exception can be applied to allow a party to enforce a judgment against a non-party whose interests were adequately represented in the prior action. *Id.* at 894-95; *Dexia Credit Local v. Rogan*, 629 F.3d 612, 629 (7th Cir. 2010). Spielman, however, was a party to the District Court litigation and thus had a "full and fair opportunity to litigate the issues in that suit." *Dexia Credit Local*, 629 F.3d at 629. For purposes of the fourth element of collateral estoppel, Spielman was fully represented in the prior action.

As for the second element, Spielman argues that the issue sought to be precluded was not "actually litigated" in the prior suit because the District Court's judgment was a default judgment.[5] Accordingly, Spielman says, collateral estoppel is not applicable to this matter.

It is true that, as a general rule, default judgments are not given preclusive effect. *Arizona v. California*, 530 U.S. 392, 414 (2000). This is because, in most cases in which a default judgment is rendered, the issues have not been actually litigated. *Id.* In such cases, "a party may decide that the amount at stake does not justify the expense and vexation of putting up a fight." *Bush v. Balfour Beatty Bah., Ltd. (In re Bush)*, 62 F.3d 1319, 1324 (11th Cir. 1995) (internal quotations omitted).

Although it acknowledges that, ordinarily, default judgments are not entitled to preclusive effect, the City points to a burgeoning exception to this rule. Specifically, the City cites to several

---

[5] The general rule regarding default judgments is the only argument that Spielman sets forth in defense of Count I of the adversary complaint.

9

federal circuit and district court cases which have concluded that a default judgment may be used

against a party with preclusive effect when the party actively participated in the prior litigation.

*Cornwell v. Loesch* (*In re Cornwell*), 109 F. App'x 682, 684 (5th Cir. 2004); *Wolstein v. Docteroff*

(*In re Docteroff*), 133 F.3d 210, 215 (3d Cir. 1997); *Fed. Deposit Ins. Corp. v. Daily* (*In re Daily*),

47 F.3d 365, 368-69 (9th Cir. 1995); *Bush*, 62 F.3d at 1323-25; *Seibert v. Cedar Rapids Lodge &*

*Suites, LLC*, 583 B.R. 214, 222-23 (D. Minn. 2018); *Herbstein*, 266 B.R. at 683-85; *Claybar v.*

*Huffman* (*In re Huffman*), Ch. 7 Case No. 16-10344, Adv. No. 16-1009, 2017 WL 4621703, at *7

(Bankr. E.D. Tex. Oct. 13, 2017); *Int'l Strategies Grp., Ltd. v. Pomeroy* (*In re Pomeroy*), 353 B.R.

371, 377-83 (Bankr. D. Mass. 2006).  These courts have recognized the exception as such: "[I]f a

party substantially participates in litigation prior to the entry of a default judgment, a federal court

can apply collateral estoppel and prevent that party from relitigating the issues decided by the

judgment." *Pomeroy*, 353 B.R. at 377.

 In *Daily*, the Ninth Circuit considered the prior litigation in which the party "did not simply

give up but actively participated in the adversary process for almost two years" before a default

judgment was entered.  47 F.3d at 366-68.  The court held that the default judgment could preclude

relitigation of the issues because the "actually litigated" requirement is satisfied when "the party is

afforded a reasonable opportunity to defend himself on the merits but chooses not to do so." *Id.* at

368.  Similarly, in *Herbstein*, the court found that a debtor "participated extensively [but] then failed

to comply with an express court order issued multiple times at a risk of incurring default."

*Herbstein*, 266 B.R. at 685.  The court held that the debtor could not "sidestep" the collateral

estoppel issue due to his own decisions in the prior litigation.  *Id.*

 The Court accepts this well-settled exception to the default judgment rule.  Thus, the Court

must now determine whether Spielman participated to a sufficient degree in the District Court

litigation to satisfy the "actually litigated" element and warrant the application of collateral estoppel.

Spielman was served the District Court complaint in February 2013, and two days later he

retained counsel to represent him in that litigation. Although Spielman never filed an answer to the

District Court complaint, his counsel continued to appear on his behalf and file motions to extend

the time to answer. In April 2015, more than two years after Spielman was served with the

complaint and appeared via counsel, the City moved for summary judgment. The District Court

granted the motion, which was unopposed, but allowed Spielman a prove-up hearing to determine

the amount owed. Before the hearing could be held, Spielman filed his chapter 7 petition. Once the

District Court litigation resumed after this Court modified the automatic stay, Spielman participated

extensively by filing a motion to vacate the default judgment, which was fully briefed and denied,

and then another motion to reconsider the denial. When the City filed its final motion for default

judgment, Spielman filed a response, the City a reply, and the motion was referred to a magistrate

judge for consideration.

Based on the recommendation of the magistrate judge and the opinion of the District Court,

the City's final motion for default judgment was considered on its merits. (PSOF, Exs. C & D.) In

her Report and Recommendation, the magistrate judge clearly considered Spielman's arguments

before ruling in the City's favor. This is not a situation in which Spielman did not have his day in

court.

Based on the foregoing, the Court concludes that all elements of collateral estoppel have been

satisfied. As such, Spielman is estopped from relitigating the fraud claims relating to the False

Claims Ordinance which were previously decided by the District Court.

11

The Court further concludes that the facts presented demonstrate that all of the elements required for nondischargeability pursuant to the fraud prong of § 523(a)(2)(A) have been satisfied. Accordingly, the City's motion as to Count I will be granted under that statutory exception to discharge, and judgment will be entered declaring that damages in the amount of $4,454,836, which represent the actual damages suffered by the City, are nondischargeable.

## B. Dischargeability Under § 523(a)(7)

Next, the City contends that it is entitled to judgment as a matter of law on Count II of the adversary complaint pursuant to § 523(a)(7). This provision excepts from discharge any debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss[.]" 11 U.S.C. § 523(a)(7). *See also In re Towers*, 162 F.3d 952, 953 (7th Cir. 1998) ("§ 523(a)(7) precludes discharge of fines, penalties, and forfeitures."). Section 523(a)(7) "creates a broad exception for all penal sanctions, whether they be denominated fines, penalties, or forfeitures. Congress included two qualifying phrases; the fines must be both 'to and for the benefit of a governmental unit,' and 'not compensation for actual pecuniary loss.'" *Kelly v. Robinson*, 479 U.S. 36, 51 (1986) (quoting 11 U.S.C. § 523(a)(7)).

The City argues that the second and third components of the judgment award, representing treble damages and civil penalties, are nondischargeable pursuant to § 523(a)(7). Spielman does not argue that these portions of the judgment are dischargeable; in fact, he argues merely that collateral estoppel does not apply to default judgments. As that argument addresses only Count I of the adversary complaint, Spielman has not mounted a defense as to Count II.

As an initial matter, in regard to both components of the judgment award that the City argues are nondischargeable pursuant to § 523(a)(7), the City is undoubtedly a "governmental unit" as that

12

term is used in the Bankruptcy Code. In particular, the Code defines "governmental unit" as

including a municipality. 11 U.S.C. § 101(27).

The third component of the judgment award represents $190,000 for civil penalties awarded

by the District Court to the City for Spielman's violation of the False Claims Ordinance. MCC §

1-22-020(7); PSOF, Ex. C, p. 1 (adopted by the District Court, PSOF, Ex. D, p. 1). Such penalties

are precisely the type of debt that is nondischargeable under § 523(a)(7). The penalties are unrelated

to the City's "actual pecuniary loss"; rather, they are imposed by statute. Thus, there is no doubt that

the civil penalties awarded by the District Court in the amount of $190,000 are nondischargeable.

*See also Winters v. United States (In re Winters)*, Ch. 7 Case No. 03-40517-L, Adv. No. 04-00692,

2006 WL 3833921, at *6 (W.D. Tenn. Dec. 28, 2006), *vacated due to death of debtor*, 2007 WL

1149952 (Bankr. W.D. Tenn. Feb. 16, 2007) (holding that a civil penalty imposed by the False

Claims Act was nondischargeable under § 523(a)(7)).

The second component of the judgment award represents treble actual damages, less the

amount representing actual damages. The District Court awarded treble damages pursuant to the

False Claims Ordinance, adopting the magistrate judge's recommendation that "[t]he [federal] Act,

and the City's Ordinance, authorize[] penalties of $5,000 to $10,000 per false claim plus three times

the amount of actual damages sustained by the City."[6] (PSOF, Ex. C, p. 4.) As the City argues,

some courts that have addressed the issue have held that the treble damages imposed by the False

Claims Act are nondischargeable under § 523(a)(7). *See United States v. Custodio*, No. CIV.A. 94-

---

[6] The magistrate judge applied the MCC False Claims Ordinance in her opinion: "The parties agree that the Chicago False Claims Ordinance is modeled upon, and provides the same manner of relief[ ] as[,] the federal False Claims Act . . . . Thus, case law interpreting the Act may be used to interpret the Chicago False Claims Ordinance." (PSOF, Ex. C, p. 4; *see also* PSOF, Ex. D, pp. 2-3.)

13

Z-2390, 1995 WL 670137, at *1 (D. Colo. Nov. 1, 1995); *McFarland v. United States (In re McFarland)*, 399 B.R. 549, 553 (Bankr. M.D. Fla. 2009); *United States v. Cassidy (In re Cassidy)*, 213 B.R. 673, 679 (Bankr. W.D. Ky. 1997). These courts have concluded that "[t]he treble damages imposed by [the False Claims Act] are penal in nature, as opposed to being compensation for actual pecuniary loss." *Cassidy*, 213 B.R. at 679.

Since the issuance of several of these decisions, the U.S. Supreme Court has provided additional guidance as to the dischargeability of treble damages in fraud cases. *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998). In *Cohen*, the Court held that "[t]he most straightforward reading of § 523(a)(2)(A) is that it prevents discharge of 'any debt' respecting 'money, property, services, or ... credit' that the debtor has fraudulently obtained, *including treble damages assessed on account of the fraud.*" *Id.* (emphasis added) (citing *Field v. Mans*, 516 U.S. 59, 61, 64 (1995)). *Cohen* suggests that the damages trebled pursuant to the False Claims Ordinance are more appropriately found nondischargeable under § 523(a)(2)(A), rather than § 523(a)(7).

The court in *Winters* reached the same result based on both the *Cohen* decision and the statutory language. *Winters*, 2006 WL 3833921, at *6-7. The *Winters* court noted that "treble damages [are] distinguished from, and [are] not, a civil penalty." *Id.* at *7. Looking at the statutory language, the MCC dictates that when a party is found to have committed fraud, he is "liable to the city for a civil penalty . . . *plus* three times the amount of damages which the city sustains because of the act of that person." MCC 1-22-020(7) (emphasis added). The plain language of the statute separates the civil penalty portion of the award from the treble damages portion, which indicates that, under the statute, treble damages are not considered a penalty.

Additionally, in its opinion, the magistrate judge cited to *Morse Diesel Int'l, Inc. v. United*

14

*States*, 79 Fed. Cl. 116, 125 (2007), which examines the legislative history of the False Claims Act

and the division of the civil penalties and treble damages awards.  (PSOF, Ex. C, p. 4.)  The *Morse*

*Diesel* court recognized that "the civil penalty component and separate damage component of the

False Claims Act were meant to provide for restitution to the government of money taken from it by

fraud, and that the device of [treble] damages . . . plus a specific sum was chosen to make sure that

the government would be made completely whole." 79 Fed. Cl. at 125 (internal quotation omitted)

(citing *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 551 (1943)).  "While it is true that the

treble damage provision of the [False Claims Act] is intended to punish, this does not, however,

transform an award of punitive damages into a civil penalty for purposes of section 523(a)(7)."

*Winters*, 2006 WL 3833921, at *7.

Although the City argues in Count II that both the treble damages and civil penalties are

nondischargeable under § 523(a)(7), the Court concludes that the treble damages are more

appropriately found to be nondischargeable under § 523(a)(2)(A) in connection with the fraud claim

in Count I.  Therefore, Count I of the City's motion will be granted as to actual damages in the

amount of $4,454,836, as discussed above, and as to treble damages in the amount of $8,909,672;

Count II of the City's motion will be granted as to the civil penalties in the amount of $190,000.

## CONCLUSION

For the foregoing reasons, the Court finds that, as a matter of law, the debt at issue is

excepted from discharge pursuant to §§ 523(a)(2)(A) and (a)(7).  Accordingly, the City's motion for

summary judgment will be granted on both counts.  A separate order will be entered consistent with

this Memorandum Opinion.

15

Dated: **August 6, 2018**                    **ENTERED:**

Janet S. Baer
United States Bankruptcy Judge